UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

VIRGIL L. LaCHANCE,

           Petitioner,

V.

SUPERINTENDENT RAYMOND
CUNNINGHAM,

           Respondent.

**REPORT AND RECOMMENDATION**

07-CV-901
(LEK/VEB)

---

## I. INTRODUCTION

Petitioner Virgil LaChance, represented by counsel, commenced this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254[1]. Petitioner is an inmate at the Woodburne Correctional Facility. In 1995, he entered a plea of guilty in a New York State court to two counts of Manslaughter in the First Degree. Petitioner contends that his conviction was imposed in violation of his constitutional rights and should therefore be vacated.

The Honorable Norman A. Mordue, Chief United States District Judge, referred the instant case to this Court pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) for a report and recommendation. (Docket No. 13).

---

[1] The form that Petitioner's attorney used states that it is an application for "Habeas Corpus Under 28 U.S.C. Section 2241." Given the fact that Petitioner is in state custody at the Woodburne Correctional facility and because his claims contest his conviction, it appears that the use of the 2241 form was a clerical error and this Court will construe the petition as one cast under 28 U.S.C. §2254.

## II. BACKGROUND

**A.     Facts**

In February of 1994, forty-six (46) year old Fred Beatty and his twenty-three (23) year old girlfriend, Christine Loya, were found murdered in Beatty's home in Saratoga, New York.  (M at 338).[2]  Beatty had been stabbed to death and Loya was hit over the head with a sledge hammer.  As part of their investigation, the police learned that Loya had been involved with twenty-four (24) year old James Kussius and that Petitioner, then twenty-one (21) years old, was a friend of Kussius.  (Id. at 338, 344).  The police attempted to contact Petitioner and one month after the murders, on March 7, 1994, Petitioner spoke to the police regarding his involvement in the murders and signed a written statement.  (Id. at 5-11).

In Petitioner's statement to the police, he admitted his involvement in the murders. He stated that Kussius had asked him to drive to Beatty's home and admitted that Kussius borrowed his knife to murder Beatty.  (Id. at 5-6).  Petitioner told the police that he did not believe Kussius was going to actually murder anyone.  Once at Beatty's trailer, Loya let them in and Kussius, Loya, and Petitioner talked for about a half hour.  (Id. at 7).  Beatty was sleeping in a back bedroom, and came out to see who was in the trailer.  According to Petitioner's statement, after telling Beatty that they had run out of gas, Kussius and Beatty looked for a bottle to put gasoline in.  At that point, Kussius stabbed Beatty several times.  (Id. at 8). Petitioner stated that Kussius directed him to tie Loya up, whereupon Kussius gagged her and then crushed her skull with a sledge hammer.  (Id. at 9-10).  The

---

[2]References preceded by "M" are to the pages of "Exhibit M"attached to Respondent's Answer in this case found at (Docket No. 9, Attachment No 13-14).

pair then left the scene of the murders and disposed of their clothes as well as the knife. (Id. at 10-11).

Thereafter, Petitioner and James Kussius[3] were arrested and charged for the deaths of Fred Beatty and Christine Loya.

### B.   State Trial Court Proceedings

The Honorable Robert L. Harrington, Saratoga County Court Judge, presided over Petitioner's pre-trial and plea proceedings. On November 14, 1994, Petitioner pled guilty to two counts of Manslaughter in the First Degree, in violation of New York Penal Law § 125.20(2), in satisfaction of the indictment against him. (Id. at 250).

On November 14, 1994, Petitioner appeared with counsel before Judge Harrington. (Id. at 250, (Plea Hearing)).  After questioning by Judge Harrington to ensure the plea was voluntary and knowing, Petitioner pled guilty to two counts of First Degree Manslaughter for the death of Beatty and Loya.  (Id. at 254-265).

On April 7, 1995, Petitioner was sentenced by the Honorable S. Peter Feldstein, Acting Saratoga County Judge, to an indeterminate sentence of eight and one-third (8 1/3) to twenty-five (25) years for each count, to be served consecutively.  (Id. at 321-322).

### C.   State Appellate Proceedings

#### 1.   Direct Appeal

On August 29, 1998, approximately three years after Petitioner was sentenced, he filed a *pro se* motion before the Appellate Division, Third Department,  for an extension of

---

[3] For his part in the murders of Beatty and Loya, Jame Kussius went to trial and was convicted of one count of Murder in the Second Degree with respect to Beatty and petit larceny.  Kussius was sentenced to twenty-five (25) years to life. People v. Kussius, 238 A.D.2d 731 (3d Dep't 1997).

time to take an appeal. (Docket No. 9, Attachment No. 1 at "Exhibit A"). Petitioner asserted that the "improper conduct" of his appointed attorney caused him to fail to file a timely appeal. (Id. at 6). On October 20, 1998, the Appellate Division denied Petitioner's motion. (Docket No. 9, Attachment No. 3 at "Exhibit C").

### 2. First CPL §440.10

On July 31, 1999, nine months after the Appellate Division denied his motion for an extension of time, Petitioner moved *pro se* for a judgment vacating his conviction pursuant to CPL §440.10. (Docket No. 9, Attachment No. 4 at "Exhibit D"). Petitioner argued that his attorney told him that he could not envision any defense that could be raised at trial and that Petitioner could risk a much longer sentence if convicted after trial. (Id.). Petitioner asserted that his attorney advised him if he pled guilty, he could received a sentence from two (2) to six (6) years, up to sixteen and two thirds (16 2/3) to fifty (50) years. (Id.).

In a decision dated April 5, 2000, the sentencing court (Judge Feldstein) denied Petitioner's motion. (Docket No. 9, Attachment 7 at "Exhibit G"). The court cited CPL §440.30(4), "which permits trial court to reach the merits of a post-judgment motion without a hearing, is designed to weed out manufactured claims premised on nothing more than a defendant's self-serving affidavit." (Id. at 5 (citations omitted)). Judge Feldstein found that a review of the record revealed that Petitioner had expressed neither dissatisfaction with his attorney at his plea hearing nor confusion about the plea he was entering. (Id.).

In a decision issued on July 14, 2000, the Appellate Division denied Petitioner's motion for leave to appeal the denial of his CPL §440.10 motion. (Docket No. 9, Attachment No. 10 at "Exhbit J").

### 3. Second CPL §440.10

More than five (5) years later, on July 15, 2005, Petitioner, represented by counsel, made a second motion pursuant to CPL § 440.10 and § 440.20 to vacate his conviction and sentence. (Docket No. 9, Attachment No. 11 at "Exhbit K").

Petitioner argued that (1) during his plea allocution he stated facts that negated the element of intent to cause serious physical injury or death and therefore his plea was not intelligent or knowing; (2) the prosecution withheld exculpatory evidence; (3) he received ineffective assistance of counsel; (4) the court should exercise its discretion in considering his motion because his first motion was *pro se*; and (5) his sentence should be vacated and he should be resentenced before a different judge because the District Attorney violated Petitioner's right to due process. (Docket No. 9, Attachment No. 15, "Exhibit N").

In an order dated April 21, 2006, the Honorable Karen A. Drago, Schenectady County Court Judge, denied the motion, citing CPL § 440.10(2)(c). The court found that there were sufficient facts on the record for Petitioner to have raised in his direct appeal and previous §440.10 motion, and having failed to do so, Petitioner's current motion was denied. Additionally, the court denied Petitioner's motion to set aside his sentence finding that Petitioner's admitted involvement in the crimes justified the sentence given to him. (Docket No. 9, Attachment No.19 at " Exhibit R"). The Appellate Division denied Petitioner's motion for leave to appeal that decision on July 6, 2006. (Id. at "Exhibits S" and "T"). Thereafter, on September 1, 2006, the New York State Court of Appeals dismissed Petitioner's application for leave to appeal. People v. LaChance,7 N.Y.3d 849 (2006).

**D.  Federal Habeas Corpus Proceedings**

Petitioner, represented by Lewis B. Oliver, Esq., commenced this action on August 31, 2007, almost a year after the conclusion of the state court proceedings, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254[4]. (Docket No. 1). Thereafter, Petitioner amended his petition in compliance with an Order issued by the Honorable Lawrence E. Kahn, United States District Judge. (Docket No. 2). Petitioner asserts four grounds in his Amended Petition for habeas relief: (1) his conviction should be vacated because during the factual recitation of his plea allocution he stated facts that negated the intent element and therefore he did not make an intelligent and knowing guilty plea; (2) the prosecution withheld exculpatory evidence; (3) he received ineffective assistance of counsel; and (4) his sentence should be vacated and he should be resentenced before a different judge because the District Attorney violated Petitioner's right to due process. (Docket No. 3).

Thereafter, Respondent filed submissions in opposition to the Petition. (Docket Nos. 8, 9 & 10). For the reasons stated below, this Court recommends that the Petition be DISMISSED.

### III. DISCUSSION

**A.     Federal Habeas Corpus Standard**

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996

---

[4] As set forth above, the form that Petitioner's attorney used states that it is an application for "Habeas Corpus Under 28 U.S.C. Section 2241." It appears that the use of the 2241 form was a clerical error and this Court will construe the petition as one cast under 28 U.S.C. §2254.

("AEDPA"). Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits." 28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001). The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan, 261 F.3d at 313 (quotation omitted). The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA. Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), and AEDPA requires a Petitioner to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002). A presumption of correctness applies to findings by both state trial and appellate courts. Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law. A

state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

### B.  Habeas Review

As set forth above, Petitioner asserts four claims for habeas relief. Respondent asserts that the Petition is barred by the applicable statute of limitations and must therefore be dismissed.

#### 1.  Timeliness

This Court notes that Petitioner, through his attorney, essentially concedes that his

petition is untimely. (Docket No. 14 at 3). Indeed, Petitioner's conviction became final thirty (30) days after the imposition of sentence, namely, May 8, 1995, when the time to file an appeal from his conviction expired. Under AEDPA, Petitioner's deadline to file a habeas corpus proceeding would have expired one year later, on May 8, 1996. However, because Petitioner's conviction became final before April 24, 1996, the effective date of AEDPA, he received the benefit of a one-year grace period and his deadline to seek habeas relief expired on April 24, 1997. See Ross v. Artuz, 150 F.3d 97, 103-104 (2d Cir. 1998).

The instant case was commenced on August 31, 2007, more than ten (10) years after the expiration of the applicable deadline. Although a collateral challenge to the conviction filed in state court will ordinarily toll the statute of limitations, that is not the case where, as here, the collateral challenges were filed after the expiration of the deadline for seeking habeas relief. See Paige v. Spitzer, No. 9:06-CV-0791, 2007 WL 1063659, at *1 (N.D.N.Y. Apr. 5, 2007) (citing Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir.2000) (per curiam) (AEDPA's tolling provision does not reset date from which the one-year limitations periods begins to run); Youngblood v. Greiner, No. 00 CIV. 7984, 2003 WL 145546, at *2 n. 3 (S.D.N.Y.Jan.21, 2003) ("Smith v. McGinnis ... made clear that the limitations period does not begin anew after collateral relief is pursued"); Rodriguez v. People of State of New York, No. 01 CIV. 9374, 2003 WL 289598, at *13 (S.D.N.Y. Feb. 11, 2003) (citing Smith); Scarola v. Kelly, 99 CIV. 4704, 2001 WL 849449 at *3 (S.D.N.Y. July 27, 2001) (filing of a post-judgment state court motion does not restart the one year limitations period); Stokes v. Miller, 00 CIV. 0806, 2000 WL 1121364, at *2 n. 3 (S.D.N.Y. July 21, 2000) ("[i]t is well-settled that post conviction or other collateral review does not start the one year statute of limitations to run anew") (citing Smith).

Accordingly, and as essentially conceded by Petitioner's counsel, this Court finds the Petition untimely.

### 2. Equitable Tolling

However, Petitioner argues his case presents "a rare and exceptional circumstance," and that he is therefore eligible for equitable tolling of the otherwise applicable statutory bar.

The one-year AEDPA filing limitation is not jurisdictional and, under certain circumstances, may also be equitably tolled. Acosta v. Artuz, 221 F.3d 117, 119, 122 (2d Cir.2000) (citing Smith, 208 F.3d at 17). The petitioner bears the burden of demonstrating that (i) "extraordinary circumstances prevented him from filing his petition on time," Smith, 208 F.3d at 17, and (ii) he "acted with reasonable diligence throughout the period he seeks to toll," id. See also Pace v. DiGuglielmo, 544 U.S. 408, 417-18 & 418 n. 8, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) (assuming without deciding that equitable tolling is available under AEDPA).

Equitable tolling also "requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir.2000).

"Extraordinary circumstances" are events which were "beyond [petitioner's] control" and which prevented successful filing during the one-year time period. Smaldone v. Senkowski, 273 F.3d 133 (2d Cir. 2001).

As noted above, Petitioner blames his attorney for his failure to timely pursue his claims. Petitioner alleges that his attorney did not advise him properly concerning his limited

right to appeal from his guilty plea and that the trial court and prosecution essentially confirmed this erroneous advice.

The Second Circuit has stated that "attorney error normally will not constitute the extraordinary circumstances required to toll the AEDPA limitations period[.]" Baldayaque v. United States, 338 F.3d 145, 152-53 (2d Cir.2003) (citing Geraci v. Senkowski, 211 F.3d 6, 9 (2d Cir.2000) (holding that a mistake by counsel as to the calculation of time remaining to file a petition did not constitute "extraordinary or unusual circumstances that would justify equitable tolling of the AEDPA's one-year limitation period")).

Moreover, even if Petitioner's counsel provided incorrect advice concerning his appeal rights and even assuming that such attorney error might be considered an extraordinary circumstance, that would still not be sufficient to justify equitable tolling. Baldayaque, 338 F.3d at 153. Rather, a habeas petitioner must also demonstrate that he acted with "reasonable diligence, and that the extraordinary circumstances caused his petition to be untimely." Id. (citing Hizbullahankhamon, 255 F.3d at 75); see also Raynor v. Dufrain, 28 F.Supp.2d 896, 900 (S.D.N.Y.1998) ("Because petitioner alleges that his attorney's failure to file a notice of appeal constituted ineffective assistance of counsel, there is some suggestion that this court might equitably toll the statute of limitations for the time in which petitioner was attempting to file a late notice of appeal.... However, we do not believe, even if this allegation is true, that such failure constituted 'extraordinary' or 'rare and exceptional' circumstances, making it 'impossible to file his petition on time.'")

In the present case, Petitioner is utterly unable to account for the significant and substantial delays in pursuing his claims. Even if he was initially provided with incorrect advice concerning the waiver of appellate rights contained in his plea agreement, Petitioner

11

has not offered an adequate explanation as to (a) why he delayed seeking to appeal from his sentence for more than three years after he was sentenced or (b) why he waited *nearly a year* after the conclusion of the state court collateral proceedings before filing the instant action.

In sum, the record belies any argument that Petitioner acted with due diligence and he is accordingly not entitled to equitable tolling.  See Valverde, 224 F.3d at 134 ("[I]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing."), Smith, 208 F.3d at 17 (noting that petitioner seeking equitable tolling must "have acted with reasonable diligence throughout the period he seeks to toll"); Littlejohn v. Smith, 06-cv-1607, 2007 WL 2325123, at *3 (E.D.N.Y. Aug. 9, 2007) (finding that petitioner was not entitled to equitable tolling because, *inter alia*, he failed to provide "any excuse for the five month gap between [the] conclusion of all state court review and the filing of his habeas petition"); cf. also Plowden v. Romine, 78 F.Supp.2d 115, 120 (E.D.N.Y.1999) ("There is no limiting principle to [petitioner's] argument that simple ignorance-absent any showing of diligence on his part or allegations of impediments to his staying informed about this case-should provide a basis for equitable tolling; to hold that the statute of limitations should be extended in this case would allow the statute to be extended indefinitely.").

Accordingly, because this Petition is untimely and Petitioner has not demonstrated an entitlement to equitable tolling, this Court recommends that the Petition be DISMISSED.

## IV. CONCLUSION

For the reasons stated above, the Court recommends Virgil LaChance's petition for a writ of habeas corpus be denied and that the Petition be dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue. <u>See</u> 28 U.S.C. § 2253(c)(2) (1996).

                                                                      Respectfully submitted,

                                                                      Victor E. Bianchini
                                                                      United States Magistrate Judge

DATED:      November 17, 2008

              Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk**

**of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

November 17, 2008

Victor E. Bianchini
United States Magistrate Judge